Elisa Tavárez Widow of Storer, Plaintiff and Appellee, v. San Juan Lodge Number 972, Benevolent and Protective Order of Elks, etc., Defendant and Appellant.

No. 9621. Argued April 14, 1948.—Decided May 7, 1948.

682

*F. Prieto Azúar* for appellant. *Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes,* for appellee.

Mr. Justice Marrero delivered the opinion of the Court.

For several years the defendant, San Juan Lodge No. 972, Benevolent and Protective Order of Elks, used to hold, on Friday of each week, bingo parties in the building which constitutes its local domicile, situated in Nereidas Ave., Santurce. As admission fee in connection with those parties it charged $1.25 per person, and retained 25 per cent of the total proceeds thus obtained in order to raise funds with which to give parties to the members of the armed forces, to cooperate with institutions like the Boy's Scouts, Milk Stations, Boy's Town, American Red Cross, and Cancer League, to defray the expenses usually incurred in such bingo parties, and to improve its physical plant. In front of the above-mentioned building there is a concrete roadway with a width of about 14 feet, having the form of a semicircle or semiellipse, which starting on the sidewalk near the western boundary of the lot passes underneath the marquee of the building facing Nereidas Avenue and ends in the same sidewalk, at the left boundary of the building. Between said concrete roadway and the sidewalk there is a comparatively small space, also having the form of a semiellipse, and which is divided in the center by a second roadway located at right angles and leading from the said sidewalk to the marquee. The space thus divided is from ½ to 1½ inches higher than the sidewalk. Along its border it has a small concrete curb raised at the above-stated height and on the day hereinafter referred to it was devoid of grass or flower plants, it had no

hedges alive or dry, or benches, sunshades, or any signpost indicating that the defendant prohibited passage over it. It was not covered with cement either, and the soil which it contained was wholly sandy. It has been designated as a grassplot (*"reata"*) by the defendant.

On the evening of Friday, September 10, 1943, the plaintiff Elisa Tavárez, widow of Storer, accompanied by her friend Carmen Henares de Denton, came in the latter's automobile to defendant's premises for the purpose of attending, as she had done on other occasions, the bingo party which was being held there. Upon arriving, Mrs. Denton parked her automobile on the semicircular roadway already described, near the right-hand end of the marquee. It was about eight o'clock and immediately they went to the lower story of the building, where they joined the bingo party, together with 800 or more persons who had come there with a similar purpose. When the party ended, between 10:30 and 11:00 o'clock at night, the plaintiff and her friend, as well as the other persons who were there, many of whom had arrived since 5:30 p.m., tried to get out quickly by the two front doors of defendant's building leading to the Avenue. Upon reaching her automobile Mrs. Denton occupied the seat near to the steering wheel, in the left front part of the vehicle. As at that moment there were numerous persons and several other automobiles on the roadway, the plaintiff, in order to reach the front seat on the right side of her friend, decided to go around the vehicle. Accordingly, she started to walk on the semicircular vacant space above described, with such bad luck that she thrust her right leg into a small hole in the ground, a little over 20″ in depth, which contained the main water valve. The plaintiff fell to the ground; but she was promptly picked up by several persons and placed in the back seat of her friend's automobile. She was then taken to her home where she was confined to her bed for some time. By reason of the injuries received she brought an action for damages against the San Juan Lodge No. 972, Benevolent and

Protective Order of Elks. After the case was tried on the merits, the District Court of San Juan sustained the complaint and adjudged the defendant to pay the total sum of $2,017, including $250 as attorney's fees. Feeling aggrieved by that decision the defendant appealed, and in its brief it has assigned seven errors which we will discuss in the course of this opinion.

 Appellant first contends that the lower court committed an error of law in not admitting evidence regarding the use of the *"reata"* or grassplot which the plaintiff crossed. Such an error is nonexistent. In connection with the so-called grassplot, Mrs. Denton was asked by defendant's attorney: "For what do you think that place in the premises is used?" Plaintiff's attorney objected and the court sustained the objection. We do not see, however, how the defendant could have been prejudiced by this action of the lower court when subsequently the same witness was asked if there was any grass planted within that small place and she answered in the negative, and also when in connection with that same question Rafael Bird, Secretary of the defendant, stated that the Elks used that grassplot to plant grass. Ordinarily, a witness should testify only as to facts that are personally known to him and he should not be permitted to state his views or opinion. The question put to the witness was evidently inadmissible, and therefore it was not error to refuse to allow the incident to be reported, as established by Rule 43(c). The evidence was clearly inadmissible.[1]

 The defendant next urges that the district court erred in permitting a mere nurse to testify regarding medical questions of a technical character. *Natividad de Jesús* testified that she is a graduate nurse and that on the morning

---

[1] "Rule 43(c).—*Record of Excluded Evidence.*—In any action, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may request and the court shall order that the evidence sought to be elicited by the objected question be taken and reported in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged."

of September 11, 1943, she was called to attend the plaintiff; that she found her in bed and that she saw that she had a serious contusion and laceration on the right leg, from the knee down. Indeed, we do not see why this witness, which was experienced in this field, could not testify regarding things so elemental as contusions and lacerations. As we stated in *Yordán* v. *Ríos,, ante* p. 241, "Any incidental reference in technical terms used by the plaintiff, such as the injury in the 'tibia' swelling, pains in the tendons, and the use of 'diathermy,' are so well known and so widely used that it does not mean that only an expert should have used them." Moreover, the plaintiff also introduced as a witness *Dr. Manuel Pavía Fernández,* and he corroborated the testimony of the witness De Jesús regarding the injuries received by the plaintiff.

■ The defendant next urges the lower court erred in admitting evidence regarding a supposed contract of insurance, (*a*) beacuse this was not a question at issue and (*b*) because it involved a carbon copy which was not adequately identified and which was introduced with the only purpose of showing that there existed an additional source of recovery. When the evidence for the plaintiff was being introduced, Attorney *Antonio E. Simonpietri* took the witness stand and stated that he was the manager of the Department of Claims of the Maryland Casualty Co. Upon being asked whether that company had any business relations with the defendant, the latter objected to the question and the court admitted the testimony. Subsequently an insurance policy was offered and admitted in evidence, tending to show that through said policy the defendant had sought to protect itself against the risks arising from accidents similar to the one met by the plaintiff. Oral and documentary evidence to that effect was clearly irrelevant. Whether or not the defendant was insured, it did not increase or decrease its liability. For example, if a person who operates a vehicle injures a pedestrian, his liability will depend upon the

attendant circumstances and not on whether he is insured or not. On the other hand, the carbon copy of the policy was clearly inadmissible, since no effort was made to obtain the original from the defendant. Section 85 of the Law of Evidence.[2] However, this does not constitute a reversible error, for, as we have already indicated, in an action for damages the liability of the defendant depends on the attendant circumstances and not on whether or not he has obtained an insurance policy to cover a risk similar to that involved in the accident.

■ As a fourth assignment the defendant urges that it was error to permit, over its repeated objection, that a leading question be· answered in connection with the very vital question regarding the previous warning of the alleged danger. This error is also nonexistent. The witness Mrs. Denton was asked by plaintiff's attorney whether, "in connection with the hole above referred to, there was any signpost or any object which indicated the existence of that hole." She answered in the negative. She was asked once more whether any warning had been given to the public by any person connected with the Elks of the existence of that hole there," and the defendant objected at that time since the question was leading. Then plaintiff's attorney stated: "Very well." And asked the witness "Did any person give any warning concerning the danger or anything?" and the witness answered "None." The plaintiff widow of Storer herself was asked a similar question and she answered in the negative without the defendant making any objection. Therefore, not only because the witness Mrs. Denton had answered several questions on this particular, but also because the plaintiff herself was allowed, without any objection, to testify regarding the same matter, the defendant is barred from raising the question as error.

---

[2] "Sec. 85. If a written document be in the custody of anybody, he must first have reasonable notice to produce it; if he then fail to do so, the contents of the document may be proved as in case of its loss. . ."

The defendant also contends that the District Court erred in reaching the conclusion that the defendant lodge, notwithstanding the fact that it is admittedly an institution organized for charitable and patriotic purposes, was guilty of actionable negligence, such as if it were a lucrative enterprise. There has been no error regarding this particular either. In the past the courts frequently held that charitable institutions were not liable for torts. Cf. *Candal et al.* v. *Soc. Esp. de Auxilio Mutuo,* 37 P.R.R. 811. However, the modern tendency is to attach liability to such institutions when, by their acts or omissions, they cause damage to a human being. See 10 Am. Jur., § 143, p. 690; 133 A.L.R. 809, 819, and the monograph which appears at p. 121 and succeeding pages, and *Klopp* v. *Benevolent Protective Order of Elks,* 33 N.E. (2d) 161. Furthermore, we think that the defendant, in view of the surrounding circumstances of this case cannot be considered as a charitable institution. It is true that according to its articles of incorporation it was organized "with the purpose of constituting an association not for pecuniary profit." However, the evidence showed that the defendant collected an admission fee of $1.25 from every person who came to the bingo parties; that it distributed only 75 per cent of the total amount charged for the admission therein; that it retained a 25 per cent gross which it used in the form which we have already indicated; that with the net profit it obtained it improved its physical plant, bought four excellent billiard tables for the exclusive enjoyment of its members; and it established a cantine for the persons who played bingo, also obtaining in this manner additional profits. Under these circumstances, it must be held that for the purpose of an action for damages, the defendant can not be considered as a charitable institution. The case of *Carrasquillo* v. *Am. Missionary Association,* 61 P.R.R. 837, was concerned with the liability of a hospital which rendered the greater part of its services to poor people to whom it did not charge any fee for such services and at the same time it

attended persons of means to whom it charged for its services. It was held that said association was liable for the damages caused. The case of *Candal et al.* v. *Soc. Esp. de Auxilio Mutuo, supra,* was then distinguished. Although substantially the same distinction could be made herein, we prefer to clearly state at this time that the case of *Candal,* regarding the specific question under discussion, should be considered now expressly overruled.

 In its sixth assignment the defendant urges that the lower court erred "in holding that the plaintiff did not incur in contributory negligence in walking over the grassplot, which was a place not used for the passage of persons and which did not form part of the facilities supplied to the guests, the plaintiff in this manner assuming the risk of her wilful act."

The evidence shows that the widow of Storer was not on the premises of the defendant as a trespasser or as a licensee. She was rather an implied invitee. We say an implied invitee because, although the defendant did not advertise in the newspaper or over the radio the bingo parties it held, at least among a great number of persons it was known that such games were held therein and that the defendant permitted the entrance to such parties to every person who paid the sum of $1.25. Ordinarily, about 800 or 1,000 persons came to said place on the nights the bingo parties were held and, similarly as she had done on prior occasions, the plaintiff came to the premises of the defendant with its consent and knowledge and for its benefit and profit. The liability of the owner of an establishment or spectacle is greater for an invitee than for a trespasser or a licensee. 38 Am. Jur., § 96, p. 754; 45 C.J., § 220, p. 809. On the other hand, the evidence accorded credit by the lower court also showed that at the end of the bingo parties, all the persons attending said games were openly allowed to walk over said grassplot without any objection whatsoever on the part of the defendant. Under those circumstances, the plaintiff could hardly be charged

with contributory negligence. See *Figueroa* v. *Am. Railroad Co.*, 64 P.R.R. 320, 328; *Davidson* v. *H. I. Hettinger & Co.*, 62 P.R.R. 286; *Font* v. *Viking Construction Corporation*, 58 P.R.R. 691, 699; Restatement of the Law, Torts, Negligence, American Law Institute, §§ 466 and 473, pp. 1230 and 1243.

■ The last error assigned by the defendant is that the lower court erred in granting a total award of over $2,000, although the injury was a mere laceration which has not left the slightest physical incapacity.

Let us examine the testimony of Dr. Pavía Fernández in order to determine the injuries suffered by the plaintiff. This witness stated that he attended Mrs. Storer about the year 1943; that the latter had suffered an accident and that in her right leg the skin had been torn off for about 1 foot in length; that she had sustained a great destruction of the tissues and small abrasions in her left leg; also that she had scratches in her arms and shoulders but that the large wound was in her right leg; that when there is a loss of the superficial tissues the wounds are very annoying and take long to heal; that such wounds make the movements of the leg difficult and they burn and are painful. That the wound was over the tibia and could not be deep because there is no much tissue to lose, the wound reaching the bone immediately; that the pain plaintiff felt must have been very intense; that she was in bed for 10 or 12 days; and that he charged her $100 for his fees. For the physical damages suffered by the plaintiff and for her mental suffering, annoyance, and inconvenience the lower court granted to her the sum of $1,200. It did not err in fixing that amount. Cf. *Graniela* v. *Yolande, Inc.* 65 P.R.R. 100.

The lower court also held that the plaintiff had about 40 pupils in her music academy; that she earned from $600 to $700 monthly; and that as the accident occurred on September 10, 1943, and the plaintiff was compelled to suspend her classes up to November 1 of that same year, she failed to receive any income for two-thirds of a month, that is,

about $467. If the lower court erred regarding that particular, it did so when calculating that the plaintiff had not received an income for two-thirds of a month, since from September 10 to November 1 there elapsed 51 days and not 20. The defendant was not thereby prejudiced.

For medical services the plaintiff was granted the specific amount paid by her to Dr. Pavía Fernández. *Martínez* v. *Báez*, 63 P.R.R. 751.

As to attorney's fees, it seems to us that the lower court did not err in fixing them at $250. Cf. *Carrasquillo* v. *Am. Missionary Association, supra,* at p. 854.

Since all of the errors assigned are nonexistent, the judgment appealed from should be affirmed.

Mr. Justice De Jesús did not participate herein.